# EXHIBIT A

## CONFIDENTIAL SETTLEMENT AGREEMENT, GENERAL WAIVER, AND RELEASE

THIS CONFIDENTIAL SETTLEMENT AGREEMENT, GENERAL WAIVER, AND RELEASE (the "Agreement") is made and entered into by and between Susan Maxwell ("Maxwell"), Florida Psychological Associates, LLC (the "Company"), and Catherine Drew ("Drew"). The Company, Drew, and Maxwell shall sometimes be referred to collectively herein as the "Parties."

### RECITALS

WHEREAS, Maxwell is a former employee of the Company;

WHEREAS, Maxwell has filed a lawsuit against the Company and Drew styled *Susan Maxwell v. Florida Psychological Associates, LLC, et al.*, with the United States District Court for the Middle District of Florida – Jacksonville Division, Case No. 3:18-cv-00339-BJD-PDB (the "Lawsuit"), alleging violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") and the Florida Private Sector Whistleblower Act, § 448.102, Fla. Stat. ("FWA");

WHEREAS, the Company and Drew deny all claims asserted by Maxwell in the Lawsuit based on, *inter alia*, their continued good faith belief that, under 29 U.S.C. § 213(a)(1) and its regulations, Maxwell was salaried-exempt from the provisions of the FLSA requiring overtime compensation for hours worked in excess of 40 in a single workweek while employed by the Company;

WHEREAS, Maxwell acknowledges and admits that she is not entitled to any liquidated damages in the Lawsuit because any failure by the Company and Drew to pay Maxwell for all hours worked in a single workweek was in good faith and neither a willful nor a knowing violation of any federal, state, or local law or ordinance given the Company's and Drew's reliance on 29 U.S.C. § 213(a)(1) and its regulations; and

WHEREAS, the Parties understand and agree that the claims and causes of action asserted in the Lawsuit are disputed, that the Parties are desirous of settling such disputes to avoid the expense and uncertainty of further litigation, and that the Parties are entering into this Agreement for the purposes of settling, compromising and resolving any and all claims Maxwell may have against the Company, and to settle and compromise any and all prior and existing disputes, claims and controversies between the parties without any future cost and expense of litigation, and to bar any and all claims and controversies between the parties existing prior to the execution of this Agreement.

NOW THEREFORE, for and in consideration of the mutual promises and agreements recited below, the receipt and sufficiency of which is acknowledged, the Parties agree as follows:

### TERMS OF AGREEMENT

**1.    Reaffirmation of Recitals.** The Parties confirm that the foregoing recitals are complete, true, and correct, and they are incorporated herein and made a part hereof by this

*I certify that I have read and understand this page _____ Susan Maxwell (initials)*

Confidential Settlement Agreement, General Waiver and Release
*Susan Maxwell v. Florida Psychological Associates, LLC et al.*
Page **2** of **13**

reference.

  **2.**  **Condition Precedent.** This Agreement and the settlement described herein are subject to the condition precedent that, if required by the Court in the Lawsuit, this Agreement be approved in its current form by a written order entered by the Court in the Lawsuit ("Approval Order") and without any public filing of this Agreement in the Court's file or other public record. In the absence of such an Approval Order or the Court otherwise dismissing the entire Lawsuit with prejudice, every part of this Agreement is null, void ab initio, unenforceable, of no force or effect, and shall have no evidentiary or other legal value. The Parties agree not to take any action to prevent or impede the entry, if necessary, of an Approval Order by the Court approving this Agreement in its current form. If the Court requires public filing of this Agreement, the Company and Drew may elect, in their sole discretion, to permit this Agreement to be publicly filed, or to decline to have this Agreement publicly filed (in which case this Agreement shall be void ab initio).

  **3.**  **Consideration to be Provided to Maxwell.** In exchange for Maxwell's obligations set forth in this Agreement, and provided that, among other things, Maxwell (i) executes this Agreement, (ii) delivers a signed copy of the Agreement and all signed Internal Revenue Service ("IRS") Form W-9s to the Company's counsel, (iii) does not revoke this Agreement within the time specified in Section 14, and (iv) receives Court approval of this Agreement and/or the entire Lawsuit is dismissed with prejudice, the Company will cause to be delivered to Maxwell via her counsel the gross total of Twelve Thousand Dollars and Zero Cents ($12,000.00) (hereinafter, the "Settlement Funds").

  (a)  The Settlement Funds will be apportioned as follows:

    (i)  Four Thousand Dollars and Zero Cents ($4,000.00), less all applicable tax withholdings and deductions, payable to Maxwell for alleged unpaid overtime compensation. The Company will cause an IRS Form W-2 to be issued to Maxwell in connection with this wage payment at the time and in the manner required by law;

    (ii)  One Thousand Dollars and Zero Cents ($1,000.00) payable to Maxwell for alleged non-economic damages (including alleged emotional harm). The Company will cause an IRS Form 1099 to be issued to Maxwell reflecting this non-wage payment at the time and in the manner required by law;

    (iii)  One Thousand Dollars and Zero Cents ($1,000.00) payable to Maxwell representing additional consideration for her execution of this Agreement and the obligations she assumes as a result thereof. The Company will cause an IRS Form 1099 to be issued to Maxwell for this non-wage payment at the time and in the manner required by law; and

    (vi)  Six Thousand Dollars and Zero Cents ($6,000.00) payable to the Delegal Law Offices, P.A. for attorney's fees and costs incurred by Maxwell through the course of pursuing the Lawsuit and this resolution. The Company shall have an IRS Form 1099 issued to the Delegal Law Offices, P.A. reflecting this amount at the time and in the manner required by

*I certify that I have read and understand this page.*  *Susan Maxwell (initials)*

Confidential Settlement Agreement, General Waiver and Release
*Susan Maxwell v. Florida Psychological Associates, LLC et al.*
Page **3** of **13**

law. The Parties acknowledge and agree that the attorney's fees payable by the Company to the Delegal Law Offices, P.A. were negotiated separately and apart from Maxwell's FLSA claims and that Maxwell's recovery will not be reduced by any part of the attorney's fees or costs in this case. **Maxwell specifically is aware of, and agrees with, the amount of fees to be paid to her attorneys for representing her interests in this matter, and that these fees are reasonable.**

      (b)    Subject to the terms stated in this Agreement, the Company will deliver the Settlement Funds referenced in Section 3(a) to Maxwell's counsel, James Poindexter, Esq., the Delegal Law Offices, P.A., 424 East Monroe Street, Jacksonville, FL 32202, according to the following schedule:

           (i)    Within 10 business days after the date of the Approval Order and/or dismissal of the entire Lawsuit with prejudice:

                (A)    The Company will issue one check to Maxwell in the gross amount of One Thousand Dollars and Zero Cents ($1,000.00), less all applicable tax withholdings and deductions, for Maxwell's alleged unpaid overtime compensation; and

                (B)    The Company will issue one check to the Delegal Law Offices, P.A. in the amount of One Thousand Dollars and Zero Cents ($1,000.00) for attorney's fees and costs incurred by Maxwell through the course of pursing the Lawsuit and this resolution.

           (ii)    Within 30 business days after the date of the Approval Order and/or dismissal of the entire Lawsuit with prejudice:

                (A)    The Company will issue one check to Maxwell in the gross amount of One Thousand Dollars and Zero Cents ($1,000.00), less all applicable tax withholdings and deductions, for Maxwell's alleged unpaid overtime compensation; and

                (B)    The Company will issue one check to the Delegal Law Offices, P.A. in the amount of One Thousand Dollars and Zero Cents ($1,000.00) for attorney's fees and costs incurred by Maxwell through the course of pursing the Lawsuit and this resolution.

           (iii)    Within 60 business days after the date of the Approval Order and/or dismissal of the entire Lawsuit with prejudice:

                (A)    The Company will issue one check to Maxwell in the gross amount of One Thousand Dollars and Zero Cents ($1,000.00), less all applicable tax withholdings and deductions, for Maxwell's alleged unpaid overtime compensation; and

                (B)    The Company will issue one check to the Delegal Law Offices, P.A. in the amount of One Thousand Dollars and Zero Cents ($1,000.00) for attorney's fees and costs incurred by Maxwell through the course of pursing the Lawsuit and this

*I certify that I have read and understand this page.* _____ *Susan Maxwell (initials)*

Confidential Settlement Agreement, General Waiver and Release
*Susan Maxwell v. Florida Psychological Associates, LLC et al.*
Page **4** of **13**

resolution.

    (iv)  Within 90 business days after the date of the Approval Order and/or dismissal of the entire Lawsuit with prejudice:

      (A)  The Company will issue one check to Maxwell in the gross amount of Five Hundred Dollars and Zero Cents ($500.00), less all applicable tax withholdings and deductions, for Maxwell's alleged unpaid overtime compensation; and

      (B)  The Company will issue one check to the Delegal Law Offices, P.A. in the gross amount of Five Hundred Dollars and Zero Cents ($500.00) for attorney's fees and costs incurred by Maxwell through the course of pursing the Lawsuit and this resolution.

    (v)  Within 120 business days after the date of the Approval Order and/or dismissal of the entire Lawsuit with prejudice:

      (A)  The Company will issue one check to Maxwell in the gross amount of Five Hundred Dollars and Zero Cents ($500.00), less all applicable tax withholdings and deductions, for Maxwell's alleged unpaid overtime compensation; and

      (B)  The Company will issue one check to the Delegal Law Offices, P.A. in the gross amount of Five Hundred Dollars and Zero Cents ($500.00) for attorney's fees and costs incurred by Maxwell through the course of pursing the Lawsuit and this resolution.

    (vi)  Within 150 business days after the date of the Approval Order and/or dismissal of the entire Lawsuit with prejudice:

      (A)  The Company will issue one check to Maxwell in the gross amount of Five Hundred Dollars and Zero Cents ($500.00) for Maxwell's alleged non-economic damages and additional consideration for Maxwell's obligations under this Agreement; and

      (B)  The Company will issue one check to the Delegal Law Offices, P.A. in the gross amount of Five Hundred Dollars and Zero Cents ($500.00) for attorney's fees and costs incurred by Maxwell through the course of pursing the Lawsuit and this resolution.

    (vii)  Within 180 business days after the date of the Approval Order and/or dismissal of the entire Lawsuit with prejudice:

      (A)  The Company will issue one check to Maxwell in the gross amount of Five Hundred Dollars and Zero Cents ($500.00) for Maxwell's alleged non-economic damages and additional consideration for Maxwell's obligations under this Agreement; and

*I certify that I have read and understand this page.*    *Susan Maxwell (initials)*

Confidential Settlement Agreement, General Waiver and Release
*Susan Maxwell v. Florida Psychological Associates, LLC et al.*
Page **5** of **13**

        (B)    The Company will issue one check to the Delegal Law Offices, P.A. in the gross amount of Five Hundred Dollars and Zero Cents ($500.00) for attorney's fees and costs incurred by Maxwell through the course of pursing the Lawsuit and this resolution.

        (viii)    Within 210 business days after the date of the Approval Order and/or dismissal of the entire Lawsuit with prejudice:

        (A)    The Company will issue one check to Maxwell in the gross amount of Five Hundred Dollars and Zero Cents ($500.00) for Maxwell's alleged non-economic damages and additional consideration for Maxwell's obligations under this Agreement; and

        (B)    The Company will issue one check to the Delegal Law Offices, P.A. in the gross amount of Five Hundred Dollars and Zero Cents ($500.00) for attorney's fees and costs incurred by Maxwell through the course of pursing the Lawsuit and this resolution.

        (iv)    Within 240 business days after the date of the Approval Order and/or dismissal of the entire Lawsuit with prejudice:

        (A)    The Company will issue one final check to Maxwell in the gross amount of Five Hundred Dollars and Zero Cents ($500.00) for Maxwell's alleged non-economic damages and additional consideration for Maxwell's obligations under this Agreement; and

        (B)    The Company will issue one final check to the Delegal Law Offices, P.A. in the gross amount of Five Hundred Dollars and Zero Cents ($500.00) for attorney's fees and costs incurred by Maxwell through the course of pursing the Lawsuit and this resolution.

        (c)    With the execution of this Agreement, Maxwell, individually, and her counsel, for and on behalf of the Delegal Law Offices, P.A., shall each sign and deliver an IRS Form W-9 to the Company's counsel to facilitate processing of the Settlement Funds identified in Section 3(a). Maxwell and her counsel acknowledge and understand that the Company cannot process the Settlement Funds without first receiving the forgoing W-9s. Maxwell further understands and agrees that the Company will not pay Maxwell the Settlement Funds identified in Section 3(a) until: (i) Maxwell signs and delivers this Agreement to the Company's counsel; (ii) the Company receives signed W-9s from Maxwell and her counsel; (iii) the revocation period identified in Section 14 of this Agreement has expired without Maxwell having revoked this Agreement; and (iv) the Court enters of an Approval Order and/or dismisses the entire Lawsuit with prejudice.

        (d)    Maxwell acknowledges that the Settlement Funds she is receiving will compensate her in full for all claims of wages, including but not limited to overtime, she alleges are due from the Company, Drew, and/or the Released Parties at any time during Maxwell's

*I certify that I have read and understand this page.* _____ *Susan Maxwell (initials)*

Confidential Settlement Agreement, General Waiver and Release
*Susan Maxwell v. Florida Psychological Associates, LLC et al.*
Page **6 of 13**

employment with the Company and/or the Released Parties. Maxwell further acknowledges that, pursuant to the facts of the case, liquidated damages are not warranted or appropriate, and thus, she knowingly and voluntarily waives any right to them from Drew, the Company, and the Released Parties, now or in the future.

(e)   Maxwell acknowledges and agrees that the claims and causes of action asserted in the Lawsuit are disputed and that the Settlement Funds are being paid in consideration for her execution of and obligations under this Agreement and constitute an amount to which she would not otherwise be entitled. The Settlement Funds set forth in this Section 3 settle and compromise all claims Maxwell and/or her attorney(s) have or may have against the Company, Drew, and the Released Parties (as that term is defined in Section 5 below).

(f)   Maxwell acknowledges and agrees that neither the Company nor Drew or the Released Parties (as that term is defined in Section 5 below) has made any representation to her regarding the tax consequences of any amounts received by her pursuant to this Agreement. Maxwell agrees to pay all federal, state and local taxes and any other legal obligations, if any, which are required by law to be paid by Maxwell because of any amount paid under this Agreement. Maxwell shall indemnify and hold the Company, Drew, and the Released Parties harmless from any claims made under any federal or state tax or other laws or judgments including, but not limited to, any claims for the payment of FICA, FUTA, Social Security taxes, or any other state or federal payroll tax or tax reporting liability. Further, if the IRS reallocates or reclassifies the payment referenced in Section 3(a) above, the Parties agree that such reallocation or reclassification shall have no effect on the validity of this Agreement.

(g)   As additional consideration for Maxwell's undertaking of the obligations set forth in this Agreement, the Company shall provide Maxwell with a written neutral reference letter detailing Maxwell's dates of employment with the Company, her job title, and her final rate of pay. Maxwell understands and expressly agrees that she will not be entitled to any other reference or verification of employment from the Company, Drew, or any of the Released Parties (as that term is defined in Section 5 below). Maxwell further understands that neither the Company, nor Drew or any of the Released Parties can guarantee that inquiries directed to them will be handled consistently with this Agreement.

4.   **Each Party to Bear Own Costs and Fees.**   To the extent not described in this Agreement, the Parties shall bear their own costs, expert witness fees, attorney's fees, and other expenses.

5.   **Waiver and Release.**

(a)   Maxwell, on behalf of herself, her heirs, administrators, executors, predecessors, successors and assigns, irrevocably and unconditionally waives, releases, and forever discharges Drew, the Company, its present and former parent entities, subsidiaries, related entities (including, without limitation, Florida Psychological & Associated Healthcare, Inc.), successors and affiliates, and its and their directors, officers, employees, representatives,

*I certify that I have read and understand this page.* _____ Susan Maxwell (initials)

Confidential Settlement Agreement, General Waiver and Release
*Susan Maxwell v. Florida Psychological Associates, LLC et al.*
Page **7** of **13**

agents, attorneys and insurers, employee benefit plans, trustees and all others acting in concert with them, both individually and collectively (hereinafter collectively referred to as the "Released Parties") from all claims, rights and causes of action, both known and unknown, in law or in equity, of any kind whatsoever that Maxwell has or could have maintained against any of the Released Parties through the date of signing this Agreement. Without limiting the generality of the foregoing, Maxwell waives, and she releases all of the Released Parties from, all claims, rights and causes of action relating to or arising out of the Lawsuit, her employment with, conditions of employment with, compensation by, or separation from employment with the Company including, but not limited to, those under the FLSA; Title VII of the Civil Rights Act of 1964; the Employee Retirement Income Security Act of 1974 (ERISA), as amended; the Rehabilitation Act of 1973, as amended; Age Discrimination in Employment Act (ADEA); the Older Workers Benefit Protection Act; the Civil Rights Act of 1991; Section 1981 of the Civil Rights Act of 1866, as amended; the Americans with Disabilities Act of 1990 (ADA), as amended; Executive Orders 11246 and 11478; the National Labor Relations Act (NLRA), as amended; the Family Medical Leave Act (FMLA); the Fair Credit Reporting Act; the Sarbanes-Oxley Act of 2002; the Equal Pay Act of 1963, as amended; the Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA), as amended; the Worker Adjustment and Retraining Notification Act (WARN); the Genetic Information Non-discrimination Act; the Florida Civil Rights Act; Florida's Wage Laws; the FWA; Florida Statutes Chapters 440 and 448; any other federal or state law or local ordinance, along with any violation of any state public policy, any state or local human rights or civil rights statutes or ordinances, any claims or rights of action relating to breach of contract (express or implied), tort, fraud, public policy, personal or emotional injury, retaliation of any kind including workers' compensation retaliation, whistleblower laws, slander, defamation, additional compensation, or fringe benefits up to and including the date of this Agreement. Maxwell specifically waives the benefit of any statute or rule of law which, if applied to this Agreement, would otherwise exclude from its binding effect any claims not now known by her to exist.

**BY THIS RELEASE, MAXWELL IS WAIVING ALL CLAIMS SHE HAS OR MAY HAVE AGAINST THE COMPANY, DREW, AND THE RELEASED PARTIES.**

(b)     Notwithstanding anything in this Agreement to the contrary, the release set forth in Section 5(a) does not and is not intended to release any claims that cannot be released by law.

(c)     Notwithstanding anything in this Agreement to the contrary, the release set forth in Section 5(a) does not and is not intended to prevent, restrict or otherwise interfere with Maxwell's right to (i) file a charge or complaint with any appropriate federal, state or local agency or court, (ii) testify, assist, participate in, or cooperate with the investigation of any charge or complaint pending before or being investigated by such agency or court, or (iii) enforce this Agreement.

(d)     If an administrative agency or court assumes jurisdiction over any charge or complaint involving claims that are released by Section 5(a) of this Agreement, Maxwell hereby agrees to not directly or indirectly accept, recover or receive any resulting monetary

*I certify that I have read and understand this page.*     *Susan Maxwell (initials)*

Confidential Settlement Agreement, General Waiver and Release
*Susan Maxwell v. Florida Psychological Associates, LLC et al.*
Page **8** of **13**

damages or other equitable relief that otherwise could be due, and Maxwell hereby expressly waives any rights to any such recovery or relief.

      (e)    Maxwell certifies her belief that she has no unreported workplace injury of any kind.

6. **Dismissal of Lawsuit.** Maxwell represents that she will immediately execute or have executed on her behalf all documents necessary for dismissing the Lawsuit with prejudice. Should it become necessary, Maxwell shall cooperate with the Company, Drew, and/or the Released Parties to obtain dismissal of the Lawsuit in its entirety with prejudice for no additional consideration, which efforts may include obtaining Court approval of the settlement under seal and/or subject to an in-camera review, and representing to a Court that she has been fully compensated and/or that the Parties' compromise is fair and reasonable. Maxwell agrees, promises, represents, and warrants never again to pursue the claims released in this FLSA Agreement.

7. **No Other Suits or Claims.** Maxwell represents that, other than the Lawsuit, she has no other suits, claims, charges, complaints or demands of any kind whatsoever currently pending against the Company, Drew, or any Released Party(ies) with any local, state, or federal court or any governmental, administrative, investigative, civil rights or other agency or board; nor is she aware of any facts that would serve as the basis for any civil or administrative proceeding against the Company, Drew, or any Released Party(ies). Maxwell represents that she and will not institute any other actions or lawsuits against the Company, Drew, or any of the Released Parties based upon events occurring up through and including the date of this Agreement. Maxwell understands that the Company has reasonably relied on her representations in this paragraph in agreeing to undertake and perform the obligations set forth in Section 3 of this Agreement.

8. **No Re-employment.** Maxwell agrees not to knowingly attempt to obtain employment or re-employment with the Company or any of the Released Parties, and she further agrees that the Company and the Released Parties will not at any time be under any obligation to employ her or contract with her for employment or re-employment. Maxwell further agrees that should she apply to the Company or any of the Released Parties, they shall not have any obligation to process that application or to hire her, and that failure to process the application or hire her shall not constitute a violation of any local, state or federal law, order or regulation.

9. **Non-Disparagement.**

      (a)    Maxwell agrees that she will not make any negative, disparaging or defamatory remarks to any third parties about Drew, the Company, its services, or employees, officers, owners, or related entities. Maxwell understands and acknowledges that this restriction prohibits her from making or engaging in negative, disparaging or defamatory remarks and/or conduct to any: (1) member of the general public; (2) participants, volunteers, vendors, suppliers, donors or potential participants, volunteers, vendors, suppliers, or donors of the Company; (3) member of the press or other media; and (4) current or former employees, officers and

*I certify that I have read and understand this page.* _____ Susan Maxwell (initials)

Confidential Settlement Agreement, General Waiver and Release
*Susan Maxwell v. Florida Psychological Associates, LLC et al.*
Page **9** of **13**

directors of the Company. Maxwell understands and agrees that her promise of non-disparagement is a material condition of this Agreement and to the Company agreeing to provide her with the additional consideration identified in Section 3 of this Agreement.

(b) The Company agrees that it will instruct its ownership, managing members (to the extent different from ownership), and Chief Executive Officer (Drew), only, to not make or cause others to make any negative, disparaging or defamatory remarks to any third parties about Maxwell.

(c) Notwithstanding the foregoing, this Agreement does not prohibit the Parties from (i) providing truthful testimony in response to compulsory legal process, (ii) participating or assisting in any investigation or inquiry by a governmental agency acting within the scope of its statutory or regulatory jurisdiction, or (iii) making truthful statements in connection with any claim described under Sections 5(b) and (c).

10. **Confidentiality of this Agreement and its Terms.**

(a) Maxwell, her agents and/or attorneys acknowledge that they have not disclosed, and will not and shall not disclose, either directly or indirectly, to any person, agency, entity or organization, any information concerning the negotiations for, or the existence or terms of, this Agreement, including but not limited to the amount or existence of the payments set forth in Section 3. Maxwell may only disclose such matters in a privileged context (attorney-client, legal spouse, or accountant-client) with the understanding and requirement that she shall be responsible for any disclosure made by any recipient of information from her. Maxwell may also disclose this settlement to state or federal agencies solely for tax reporting purposes or she or her counsel may do so pursuant to a valid subpoena or court order; in the latter case, Maxwell will promptly provide notice to the Company's counsel of such subpoena or court order. To any inquiries made by any other person or entity knowing that a dispute existed between Maxwell, Drew, and the Company, Maxwell shall respond only and specifically as follows: "The matter has been resolved," or words to the same effect.

(b) This Section 10 shall be liberally construed to accomplish its purpose of assuring maximum permissible confidentiality of this Agreement, which shall be deemed to be of the essence of this Agreement. Maxwell agrees specifically to be bound by the terms of this paragraph regardless of any later determination by any court or administrative body that any portion of this Agreement may be disclosed to the public. The Parties affirm that this confidentiality provision is a material provision of this Agreement and that any breach thereof by Maxwell constitutes a material breach of this Agreement. If Maxwell breaches this provision, she agrees to re-pay the total amounts the Company paid under Section 3 of this Agreement since the amount of damages to the Company from such a violation may not be reasonably ascertainable. Nothing in this Section 10 is intended to limit the Company's remedies in the event of a breach of the confidentiality provision by Maxwell.

(c) Notwithstanding the forgoing, nothing in this Agreement shall be construed to prevent disclosure of this Agreement's contents to the extent necessary in court to

*I certify that I have read and understand this page.* _____ *Susan Maxwell (initials)*

Confidential Settlement Agreement, General Waiver and Release
*Susan Maxwell v. Florida Psychological Associates, LLC et al.*
Page **10** of **13**

prove a breach of this Agreement or to support the settlement of claims raised in the Lawsuit.

11. **Confidential and Proprietary Information.**

    (a)   Maxwell acknowledges that during her employment with the Company, she may have had access to confidential and proprietary business and/or protected patient/participant health information which is the property of the Company and/or the individual participating in the Company's programs, the disclosure of which would cause substantial and irreparable harm, loss of goodwill and injury to the Company and/or its predecessor, related and affiliated entities, and participants. Maxwell agrees not to disclose any such confidential or proprietary business information without the prior written authorization of the Company. Maxwell further agrees not to disclose any confidential, protected patient/participant health information.

    (b)   Maxwell agrees that all of the Company's records, including but not limited by reason of specification to originals and copies of all documents, whether stored as papers or electronically stored (including all customer lists, policies, procedures, and manuals) that describe or pertain to the Company's business shall be considered and kept as private, confidential and privileged records of the Company and will not be divulged or disclosed by Maxwell to any person, firm, corporation, or other entity without the Company's prior written authorization. Maxwell hereby represents and covenants to the Company that all such records in her possession or control shall be returned to the Company's counsel within 10 days of her execution of this Agreement.

12. **No Assignment.**   Maxwell warrants that she has not assigned, sold, subrogated, transferred or conveyed to anyone any actions, causes of action, claims or demands that she now has or ever had against the Company or Released Parties.

13. **No Admission of Liability.**   Neither this Agreement, nor anything contained in it, shall be construed as an admission by the Company, Drew, or the Released Parties of any liability, wrongdoing or unlawful conduct whatsoever. Furthermore, the Company, Drew, and the Released Parties expressly deny that it/she/they have violated the FLSA, the FWA, or any other federal, state, or local statute, ordinance, rule, regulation, or common law.

14. **Time Limits, Revocation, and Effective Date.**

    (a)   Maxwell acknowledges and understands that she has up to 21 days from the date she received this Agreement to consider its terms. If Maxwell signs this Agreement, she may still revoke her acceptance of the Agreement for up to seven days after she signs it by notifying the Company, via its counsel, in writing before the expiration of that seven-day period. The written notice must be delivered in person, by facsimile, or by common carrier such as FedEx or UPS, no later than the seventh day after Maxwell signs the Agreement, to:

    > Robert G. Riegel, Esq.
    > Buchanan Ingersoll & Rooney, P.C.

*I certify that I have read and understand this page.* _____ *Susan Maxwell (initials)*

Confidential Settlement Agreement, General Waiver and Release
*Susan Maxwell v. Florida Psychological Associates, LLC et al.*
Page **11** of **13**

> 50 North Laura Street, Suite 2800
> Jacksonville, FL 32202
> Facsimile: (904) 598-3131

    (b)    If not revoked, this Agreement will become effective on the eighth day after Maxwell signs it. If Maxwell does not sign this Agreement within the 21-day period, or if she timely revokes this Agreement during the seven-day revocation period, this Agreement will not become effective and enforceable, and Maxwell will not be entitled to the consideration provided for in Section 3.

    **15.**    **Consult with an Attorney.**  The Company hereby advises Maxwell to consult with an attorney of her choice (at her expense) before Maxwell signs this Agreement. The Company will rely on Maxwell's signature on this Agreement as her representation that she read this Agreement carefully before signing it, and that Maxwell has a full and complete understanding of its terms.

    **16.**    **Modifications.**  This Agreement may not be altered, amended, modified, or terminated except by an instrument in writing executed by the Parties or their authorized representatives.

    **17.**    **Entire Agreement.**  The Parties represent and acknowledge that this Agreement contains the entire understanding and agreement between the Parties concerning the matters set forth herein and that, in executing this Agreement, they do not rely and have not relied upon any representation or statement made by any other party with regard to the subject matter, basis or effect of this Agreement.

    **18.**    **Supersedes Past Agreements.**  This Agreement supersedes and renders null and void all previous agreements or contracts, whether written or oral, between Maxwell and the Company, Drew, and/or any of the Released Parties concerning the subject matter of this Agreement.

    **19.**    **Binding Effect on Successors.**  The rights and obligations of the Parties under this Agreement shall inure to the benefit of and shall be binding upon their heirs, successors and assigns.

    **20.**    **Waiver of Term, Provision or Condition.**  The waiver by any party of a breach of any provision of this Agreement by any other party shall not operate or be interpreted as a waiver of any later breach of that provision or any other provision.

    **21.**    **Governing Law and Jurisdiction.**  This Agreement is made and entered into in the State of Florida, and shall be interpreted, construed, and enforced in accordance with the laws of the State of Florida. Venue for any dispute related to this Agreement will be exclusively in a court of competent jurisdiction in Nassau County, Florida.

    **22.**    **Construction.**  This Agreement is deemed to have been drafted jointly by the

*I certify that I have read and understand this page. _____ Susan Maxwell (initials)*

Confidential Settlement Agreement, General Waiver and Release
*Susan Maxwell v. Florida Psychological Associates, LLC et al.*
Page **12** of **13**

Parties. The Parties agree that the language of all parts of this Agreement shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against any of the Parties. No ambiguity or uncertainty in this Agreement shall be interpreted in favor of or against any party.

  **23. Severability.** Subject to the terms of this Agreement, should any provision of this Agreement be deemed by a court of competent jurisdiction to be unenforceable, such provision shall be deemed modified or omitted to the extent necessary to make the remaining provisions enforceable. However, such modification or omission shall not deprive either Party of the substantial benefit of their bargain. Notwithstanding the foregoing, if the release of Maxwell's FLSA claims is held to be invalid, then this Agreement shall be null and void ab initio.

  **24. Attorney's Fees and Costs; Waiver of Jury Trial.** Either party to this Agreement shall be entitled to an award of its costs and reasonable attorneys' fees expended if it prevails in any action for breach of and/or to enforce the terms of this Agreement (including seeking rescission). THE PARTIES KNOWINGLY, VOLUNTARILY, AND EXPRESSLY WAIVE THEIR RIGHT TO A JURY TRIAL SHOULD EITHER PARTY SEEK TO ENFORCE THE TERMS OF, OR PURSUE A CLAIM FOR BREACH OF, THIS AGREEMENT.

  **25. Agreement Not to be Used as Evidence.** This Agreement shall not be admissible as evidence for any reason in any proceeding except one in which a party to this Agreement seeks to enforce this Agreement or alleges a breach of this Agreement.

  **26. Original Agreement/Counterparts.** This Agreement may be executed by the Parties in separate counterparts, each of which when so executed shall be deemed to be an original, and such counterparts together shall constitute one and the same Agreement. A faxed or electronically transmitted signature shall bear the same force and effect as an original signature.

  **27. Acknowledgement.** Maxwell understands that this Agreement and the release contained herein are a complete waiver, release and discharge of all claims of any kind that she may have against the Released Parties, and Maxwell has entered into this Agreement knowingly and voluntarily. Maxwell acknowledges that the Company has advised her to consult with an attorney before signing this Agreement, and that Maxwell has consulted with her attorneys with the Delegal Law Offices, P.A. to the extent she desired to do so.

**[REMAINDER OF PAGE INTENTIONALLY BLANK]**

*I certify that I have read and understand this page. _____ Susan Maxwell (initials)*

Confidential Settlement Agreement, General Waiver and Release
*Susan Maxwell v. Florida Psychological Associates, LLC et al.*
Page **13** of **13**

**PLEASE READ CAREFULLY. THIS CONFIDENTIAL SETTLEMENT AGREEMENT, GENERAL WAIVER AND RELEASE INCLUDES A RELEASE OF KNOWN AND UNKNOWN CLAIMS.**

IN WITNESS WHEREOF, and intending to be legally bound, the Parties hereby execute this Confidential Settlement Agreement, General Waiver, and Release consisting of 13 pages and 27 enumerated sections by voluntarily signing below and with full knowledge of the significance of all of the Agreement's provisions.

| SUSAN MAXWELL | FLORIDA PSYCHOLOGICAL ASSOCIATES, LLC |
|---|---|
| _____ (Signature) | By: _____ |
| Date: 10-22-18 | Title: _____ |
| | Date: _____ |
| | CATHERINE DREW |
| | _____ (Signature) |
| | _____ (Print) |
| | Date: _____ |

*I certify that I have read and understand this page.* _____ *Susan Maxwell (initials)*

Confidential Settlement Agreement, General Waiver and Release
*Susan Maxwell v. Florida Psychological Associates, LLC et al.*
Page 13 of 13

**PLEASE READ CAREFULLY. THIS CONFIDENTIAL SETTLEMENT AGREEMENT, GENERAL WAIVER AND RELEASE INCLUDES A RELEASE OF KNOWN AND UNKNOWN CLAIMS.**

IN WITNESS WHEREOF, and intending to be legally bound, the Parties hereby execute this Confidential Settlement Agreement, General Waiver, and Release consisting of 13 pages and 27 enumerated sections by voluntarily signing below and with full knowledge of the significance of all of the Agreement's provisions.

SUSAN MAXWELL

_____
(Signature)

Date:_____

FLORIDA PSYCHOLOGICAL ASSOCIATES, LLC

By: _____[signature]_____

Title: __CEO__

Date: __10/22/2018__

CATHERINE DREW

_____[signature]_____
(Signature)

__Catherine H. Drew__
(Print)

Date: __10/22/2018__

*I certify that I have read and understand this page.* _____ *Susan Maxwell (initials)*